CONWAY et al. v. CITY OF NEW YORK et al.

(District Court, E. D. New York. February 1, 1912.)

1. SALVAGE (§ 31*)—AMOUNT OF COMPENSATION—SAVING SCOW FROM FIRE.

An award of $150 as salvage made to the owners, master, and crew of a tug for services rendered in putting out a fire in a load of rubbish on board a scow, the service requiring about an hour, and not having been attended by any particular danger to the tug or crew.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 75–77; Dec. Dig. § 31.*

Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. SALVAGE (§ 50*)—SUIT TO RECOVER—LIABILITY AS BETWEEN RESPONDENTS.

Libelants brought suit in admiralty against the city of New York to recover for salvage services rendered to a scow owned by the city. Respondent appeared, and set up as a defense that the scow was at the time under hire to an improvement company which had contracted to return it in good condition, and the service, if any, was rendered to such company. Before the issuance of citation against the company, it was adjudged bankrupt, and appeared by its trustee. *Held*, on a finding that the company was ultimately liable, that inasmuch as the city had not brought it in before bankruptcy so as\to enable libelants to require security, and it appearing that the city had security under its contract of hiring, libelant was entitled to a decree against both respondents.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 130–132; Dec. Dig. § 50.*]

In Admiralty. Suit by William J. Conway and Charles A. Fox, as owners of the tug Charles A. Fox, against the City of New York and the Water Front Improvement Company, brought in by respondent city. Decree for libelants against both respondents.

Foley, Martin & Nelson (Mr. Martin, of counsel), for libelants.
Archibald Watson, Corp. Counsel (Mr. Nicholson, of counsel), for City of New York.
William C. Foster, for trustee of Water Front Improvement Co.

CHATFIELD, District Judge (orally). I will reserve the question as to the liability of either the city or the Water Front Improvement Company; it being apparent that as it stands there is no security in the possession of the court.

[1] As to the question of salvage—that is, the mere amount—there are several things to be taken into consideration. There was no damage done to the boat in the putting out of the fire, which was in the load of ashes and rubbish. Aid had to be timely, and the advantage of calling on anybody for assistance was to prevent damage rather than to stop the damage that had already been caused. The danger was not great, taking into account the draught of the boat, the locality and the exact circumstances of the fire, but the rendering of the services was as efficient as could have been, even had the services been dangerous. When a tug undertakes such work, it takes the chance of the value of its services as well as of the danger, and in this instance the value of the service (inasmuch as the dredge was some distance away and the fireboat would have gotten there before the fire would seem to have spread to any great extent) as well as the danger of the situation proved to be less than they anticipated. According to the testimony, there was considerable blaze, and the position of the boats and the fact that access to the scows could only be had over a temporary plank seem to justify the action of the Italians in calling for help, and what they wanted was the help of a stream of water, so that the act of the tug was a salvage act. At the same time the services were not much more than pumping services. The time occupied in the entire transaction seems to have been less than an hour. The time that the fireboat had to use, whether she was aground or was simply getting to the scene of

the fire, not being great in point of time, still justifies the rendering of services by a tugboat on the spot.

As to the claims, I think that the $50 claim filed at first was evidently one for services, and was not based upon the idea of salvage. The second claim for the master and sailors would seem to have been made in full contemplation of the idea that they were entitled to compensation for what they did. The fact that the men on board of the tug did not participate in it, that the estimate of it was solely by the owner, limits him, but not the men on the tug.

I think that for such services an award of $66.67 to the owner of the tugboat and of $83.33 to the men is right. The idea of estoppel applies to the master of the tug, but under the circumstances, there being no knowledge of the claim brought home to the men, I think they are entitled to an award for what they did, and that the master's share should be cut down as I have suggested.

I will take under consideration the question of liability as against the city and the Water Front Improvement Company and the imposition of costs.

After consideration the court renders the fourth written opinion:

[2] The libel herein was filed for services performed in saving from fire a scow at Riker's Island, New York City, upon June 15, 1910, at about half past 7 in the evening. The circumstances of the transactions and the value or award have been disposed of above.

It appears that a fire occurred in a load of ashes and rubbish upon the scow. The workmen in charge called to a tug passing up the Sound. This tug put in by a short channel, and put out the fire before the fireboat could arrive. One witness testified that the fireboat had to go around by a longer channel, and seemed to be aground in the mud for a time.

As to the fixing of liability, many complications arise. The libelant is entitled to recover the allowance of $150 primarily from the owner of the barge, namely, the city of New York. Inasmuch as this barge was in use in the public service, and as the city of New York is a corporation capable of being sued, an action in rem would not lie, but under the rules of admiralty the present suit was brought in personam and no security was required.

The answer of the city was not filed until the 23d of February, 1911, and therein the city not only raises an issue upon the merits of the alleged cause of action, but also pleads in bar that a contract existed between the city of New York and the Water Front Improvement Company, by which the city of New York furnished the scow in question, with others, to the company for certain work, at the rate of $6 per day. The contractor agreed at his own cost and expense to keep the scows in good condition and repair, and to return them in good condition and repair to the city at the end of the service. Hence the city alleges that the salvage service, if rendered, was rendered to the Water Front Improvement Company, and not to the city.

A petition was filed by the city upon the same day, based upon the terms of this contract, in which citation against the Water Front Improvement Company was asked, that they might be brought in to answer the libel, and that the Water Front Improvement Company should

be condemned to pay the costs and damages of the action if any were awarded. No citation was issued thereon, nor appearance in the suit filed, but a voluntary notice of appearance by the Water Front Improvement Company in the action, praying that "right and justice in the premises should be decreed," was served upon the city of New York on the 8th day of March, 1911. Within a short time thereafter the Water Front Improvement Company was adjudicated a bankrupt, and its property is now in the hands of the trustee in bankruptcy. On November 25, 1911, the trustee in bankruptcy appeared in the action and filed an answer on behalf of himself as trustee, denying the right of the libelant to recover an award for salvage, and answering the libel upon the merits. Upon the same day the said trustee in bankruptcy interposed an answer on his own behalf to the petition filed by the city of New York, setting up as a defense to said petition an allegation that any salvage service was rendered for the benefit of the city of New York, and not for the Water Front Improvement Company. Inasmuch as the city of New York neither obtained the issuance of a citation, nor did the Water Front Improvement Company formally appear on the record prior to the bankruptcy, no occasion arose and no opportunity was afforded for the libelant to consent to the substitution of the Water Front Improvement Company as party respondent in the place of the city of New York, nor to obtain any security from the Water Front Improvement Company in the place of the res, which ordinarily would be the subject of the action.

The city of New York has now introduced in evidence the contract with the Water Front Improvement Company referred to in the answer and petition, and it would appear that any loss of services of the boat, because of the repairs to the boat itself, which were prevented by the action of the libelant at the time of this fire, would fall upon the Water Front Improvement Company under its contract. The rendering of salvage services was in a sense like the collection of insurance, if insurance had been taken out by the Water Front Improvement Company and a loss had been paid. If the boat was turned back to the city of New York in as good condition as it was turned over to the contractor, so that no claim arose under the contract, it would seem that whatever benefit was rendered by salvage was rendered to the Water Front Improvement Company, rather than to the city of New York. But this question is complicated by the possibility of damage to other property of the city and to other boats in the neighborhood, for which again a claim might have been made against the Water Front Improvement Company, and hence from the prevention of which they received benefit.

The city of New York by bringing in the Water Front Improvement Company would have made it possible for the libelant to elect to transfer his claim to the Water Front Improvement Company, relieve the city, and to seek security for his actions, which he was entitled to do in admiralty if the proceeding be in rem, but which he could not do against the city. The advantages which the libelant might have had under this situation were lost through the failure of the city of New York to compel the Water Front Improvement Company to act until the case actually was called for trial, and it now appears that the in-

tervention of bankruptcy has rendered this an unliquidated claim. Present liquidation by the decree of this court would only entitle the libelant to a dividend against the bankruptcy estate. Even if the award be made against the city, it, in turn, would have in bankruptcy merely a claim upon which it would obtain the same dividend as the claim of the libelant. But on the trial the libelant has allowed the trustee in bankruptcy finally to join in the action and to litigate the salvage claim upon the merits, and has thus apparently waived any rights which he might have had against the city for laches on its part.

Hence it is impossible to determine in this suit the rights of the three parties as they might be determined if bankruptcy had not intervened. Salvage services, however, are a claim against the property saved and the owner thereof, primarily, even if payment of this obligation can be transferred to another party when brought in as the real party in interest. This nevertheless is subject to the allowance of a claim against the original party and the substitution in the decree of the parties against whom the award shall run. In the present case the city of New York did not settle the claim when originally made because of the contract with the Water Front Improvement Company. The city of New York must by law have obtained security for itself against all loss occasioned by or representing a portion of the subject-matter of the contract entered into. This bond is available to the city, and rights under it would seem to be superior to the claim of the trustee in bankruptcy, and the salvage award, if allowed against the city, can be recovered by the city in full.

For these reasons, it would seem inequitable to allow the city to be relieved of its liability for these salvage services and to direct the libelant to pursue the Water Front Improvement Company by any process of subrogation to the city's rights. As between the city of New York and the Water Front Improvement Company, inasmuch as both the city and the Water Front Improvement Company have submitted themselves to the jurisdiction of this court to determine the obligation of the company under its contract, it must be held that the city of New York is entitled to claim under the contract set forth this salvage award as damages for the breach of contract to return the boats in as good condition as when delivered: it being evident that the salvage claim attaches to the boat, even though an action in rem be not allowed.

The execution herein should issue upon the award of salvage against the property of the Water Front Improvement Company which the city of New York has as security for the performance of the contract in question, but the libelant may have a decree for the salvage services jointly against the city of New York and the property of the Water Front Improvement Company as it existed prior to the filing of the petition in bankruptcy.